Ana Méndez-Vaz, Intervenor and Appellant, v. Juan de Choudens, Defendant and Appellee.—Antonio C. Ducret, Defendant.

No. 3727. Argued December 22, 1925—Decided June 9, 1926.

*R. Sancho Bonet* for the appellant. *José N. Quiñones* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Ana Méndez Vaz appeals from an adverse judgment based by the district judge on the following statement:

"In this case the trial of the complaint filed by Ana Méndez Vaz on intervention to recover personal property was held yesterday. The intervenor claims to be the owner of the property that was attached as belonging to Antonio C. Ducret, at the instance of Juan de Choudens, plaintiff in the main suit. She alleges that said property had been acquired by her since March 24, 1924, from Mr. Ducret, who executed a public deed on the 31st of the same month before notary Vizcarrondo Coronado, wherein it was stated that the deed would have a retroactive effect as of the date referred to, that is, March 24th, and for the sum of $1,800 which Ducret owed to the intervenor.

"On opposition to the claims of the intervenor the defendant Juan de Choudens appears and alleges, in short, that the attached property belongs to Ducret; that the conveyance by Ducret to the intervenor, as it appears from the deed of March 31, 1924, is without consideration and executed in fraud of the plaintiff creditor.

"From the evidence introduced considered as a whole, it appears that on March 31, 1924, Juan de Choudens filed his complaint in this court against Antonio C. Ducret, claiming the sum of $1,440.55 and interest; on the same day, and at his instance, the court ordered the attachment of property of the defendant, after a bond in the sum

of $1,000 had been filed by the plaintiff. On the same day, March 31st, the secretary issued an order of attachment to be levied by the marshal of the court, and on the following day, April first, the marshal attached as belonging to the defendant the property listed by the marshal himself. The complaint in intervention was filed on April 9th.

"The intervenor testified at the trial that the purchase of the property that had been attached was made by her with money which belonged exclusively to her; that she was the owner of certain personal property which she had leased to Ducret for $100 monthly; that Ducret failed to pay the rental during 18 months and that in payment of the unpaid rentals amounting to $1,800, Ducret agreed to convey to her the machinery and fixtures object of attachment, as appears from the deed executed under No. 8, in San Juan, P. R., on March 31st, before notary Vizcarrondo.

"When the attachment was being levied the marshal abstained from levying on certain objects, an automobile and a bakery appliance, because he was told by the intervenor, who was then present, that they belonged to other persons and, although she stated then and there that she was the owner of the other implements, she did not object to or protest against the attachment levied by the marshal, and nothing appears from the return in regard to the attitude of the intervenor who, as already stated, was present at the time.

"The existence of the deed of purchase and sale of personal property, deed No. 6, executed before the same notary, Mr. Vizcarrondo, on May 27, 1922, wherein defendant Ducret and William E. Kennedy, husband of the intervenor, appeared as parties, should also be mentioned. In that deed Ducret appears acquiring from Kennedy and a Mr. Suárez a set of personal property and machinery which is described exactly the same in both deeds, with the particularity that in both instruments is mentioned, together with the personal property, the same number of boxes of prunes, peaches, raisins, apples, meat, etc.

"On the other hand, among the property attached by the marshal, there are some that do not appear included in the description of clause 5 of the deed of March 31, 1924, as a Maxwell car, two Maxwell chassis, a wooden tray, a scale, biscuit molds, small paper dishes, machinery for the making of biscuits, a wooden cabinet, etc.

"It has not been controverted that after the attachment was levied and while Mr. Suro, who was the depositary of the attached property, was in a sanatorium, he delivered to Ducret, at his request, the key of the place where the property was stored in order to allow him to

manufacture confectionery. On that occasion he told Suro that he owed nothing to Mrs. Méndez for rentals, and that the sale of the property was fictitious.

"Under such circumstances, and taking into consideration the provision of section 1264 of the Civil Code which is as follows:

" 'Contracts by virtue of which the debtor alienates property, for a good consideration, are presumed to be executed in fraud of creditors.

" 'Alienations for valuable considerations, made by persons against whom a condemnatory judgment, in any instance, has been previously rendered, or a writ of seizure of property has been issued, shall also be presumed fraudulent.'

"The court is of the opinion that the intervenor has failed to sufficiently justify her right and that her claim must be overruled, imposing on her the payment of the costs."

■ A formal notarial instrument in this jurisdiction is not presumed to have been executed in fraud of creditors unless and until it is shown either to involve a transfer of property without consideration therefor or else a sale made after judgment rendered against the vendor or after the issuance of an attachment against his property. The evidence in either case must be reasonably clear and satisfactory and sufficient to support a definite finding of fact.

■ A mere suspicion, however strong or well grounded, that either or both of the conditions prerequisite to a legitimate invocation of section 1264 of the Civil Code may exist is not enough.

■ The owner of property attached as belonging to another is under no obligation or duty to resist the levy or to make any violent protest against the action of the marshal. The silence of the *return* as to the claim actually made by such owner at the moment of the levy would be more significant perhaps if the fact as to the making of such claim at that time were in dispute. But in the case at bar the officer who made the levy testified to the notice given by Ana Méndez of her claim as owner of the attached property and of her intention to assert her right thereto before the court. The

fact thus established is not questioned apparently by the trial judge.

The circumstance that the inventory contained in the transfer from Kennedy and Suárez to Ducret was followed *verbatim* two years later in the sale by Ducret to Ana Méndez is explained by 'the fact that the later instrument was drafted by the notary's clerk with the earlier document before him.

That several articles of appreciable value not included in the original inventory were omitted in the subsequent transfer points to probable haste incident to a race between the prospective vendee and a belated attaching creditor rather than to a deliberate fraud conceived and perpetrated at leisure after levy and seizure.

Other indications of accelerated action at the eleventh hour on the part of all parties concerned will also be found in the extract from the notary's testimony, *infra*.

Nor are we impressed by the admission said by Suro to have been made in his presence by Ducret. In the first place, Suro himself is flatly contradicted by the deputy marshal, as well as by intervenor, as to what occurred at the time of the levy, and by the finding of the district judge on this point. In the second place, the purpose of Ducret's visit at the time of the alleged admission was to obtain from Suro, as custodian of the attached property, a key to the building in which the same was stored. How far the success of his mission depended upon the admissions in question is not clear, but he obtained the key. In the third place, the probative value of such admissions is not enhanced, to say the least, by the peculiar conduct of Ducret himself on other occasions, whether the statements made on such other occasions be regarded as true or false. As illustrative of this point we take from the testimony of an attorney, who seems to have had no direct connection or interest in the instant case, the following:

"Q.—Had you at any time any relation with Mr. Ducret?—A.—Only a short conversation.—Q.—Will you please relate that conversation to the judge.—A.—Two or three months ago, I can not . . . (Defendant) : I object to that conversation.—(Judge) : Mr. Ducret might have come here to recount that conversation. What do you intend to prove with that?—(Plaintiff) : That it is a confabulation between Ducret and the other defendant, Mr. de Choudens, to make it appear that the property does not belong to Mrs. Méndez Vaz. Ducret transferred the property to Mrs. Méndez Vaz for the rentals, and on the same day he had himself sued by Mr. de Choudens.—(Judge) : You may testify.—A.—Two or three months ago,—it was before the election.—I had to ascertain what property had already been attached.—Q.—In what case?—A.—In the case of Juan de Choudens v. Ducret.—Q.—A case distinct from the present one?—A.—That is the action in intervention filed in this case of Juan de Choudens v. Ducret. There is the main suit, No. 540, in which I think Juan de Choudens sues Ducret, and as I understand it I represented the intervenor in the case of Juan de Choudens v. Ducret, I represented the Candem Rubber Co. It attached both personal and real property and I had to find out what real property had been attached, as I had seen the personal property.—(Defendant) : That is a case entirely distinct. This is No. 540.—A.—In this one there is attached by the Candem Rubber Co. . . . (Judge) : In this case there is nothing attached.—A.—There are two cases. In an iron safe which was the only thing left out of a long list that has been prepared by De Choudens when suing Ducret there were certain articles, and the party herein attached what was left unattached, and I attached two cars; in that proceeding in case No. 540 there is an attachment for which I gave a bond for $1,500, and two houses that appeared in the case of De Choudens were attached. Then I had to see Ducret and had the conversation with him. I went to see the two houses pointed out to me by the marshal; I did not find him. I waited and then he came and we had this conversation: 'Mr. Ducret, I represent the Candem Rubber Co. I had an attachment levied on these two houses.' 'Ah! No, these houses are not mine. De Choudens has attached these houses in that proceeding 540, but those two houses are not mine. I told De Choudens to include these two houses the same as I would have told him to include the Intendencia building; he was interested in making it appear that there was a great amount of property, which I did not have, and he attached this and the machinery, which I advise you also to attach.' 'The factory', he told me. Then he described that factory to me, masas, automobiles,

a multitude of articles. Then he explained to me that he sold that property to the intervenor Ana Méndez Vaz, that he sold those articles to her in payment of rentals, but, having awakened to the situation and wanting to get out of the wolf's mouth, he placed himself in the hands of De Choudens. 'If you want to collect the three thousand dollars, have the whole factory attached; it is worth money.' Then I told him: 'It has been attached.' 'Then let us do this: Every day Mr. De Choudens receives certain shipments and he delivers those shipments to me for me to sell them, and I sell them for whatever I can get . . .' (Defendant): What has all this to do?—A.—'Then I sell those things for whatever I can get and take it. There is a shipment and when it is delivered to me by Mr. De Choudens, if you want, you may come and attach it in my hands.' That was what he told me, and I have not seen him again; the two houses do not belong to Ducret, but to a different person.—(Defendant): I request the court to strike out the testimony of the witness because it is immaterial and hearsay.—A.—What happened was that he sold the property to her and having regretted it and believing himself to be getting himself out of the wolf's mouth he came to De Choudens. 'I told De Choudens to sue me; and then told him to include the two houses and this property to confuse the situation (deslumbrar)'. Those were Mr. Ducret's words. I convinced myself that those two houses did not belong to Ducret. I inquired from the neighbors who informed me that they did not belong to him. I had an attachment levied on two houses that were not in existence. I have not seen him since then.—(Defendant): Q.—You were told that by Mr. Ducret two or three months ago?—A.—About a month before the elections; I can not state the exact date. I went for him two or three times, but I never found him.—(Judge): Q.—What did he tell you in regard to the personal property?—A.—He told me that he had sold it to the intervenor, Ana Méndez, for rentals, but that, as he had convinced himself that he was in a wolf's mouth, he went to De Choudens who, he told me, was a relative of his. Then I told him: 'The situation is worse now'.—Q.—That is not in harmony because the complaint of De Choudens was filed prior to the sale.—A. —I say only what I was told by Ducret. My interest was only to convince myself whether the two houses belonged to him. When I was told by him that they did not, that they belonged to another, I left the place.—Q.—Were you after Ducret to sue him and attach his property?—A.—No, sir, I sued Mr. De Choudens and attached that property; I only went to see the houses.—Q.—Which houses?—. A.—The two houses that appeared attached by me, by the Candem

Rubber Co., which appeared attached by Juan de Choudens, and as we had a claim against Juan de Choudens we attached them. There was absolutely nothing against Ducret; I do not know him nor did I have any claim against him. We solely wanted to attach any property that De Chouden's might have had in the suit instituted by De Choudens against Ducret, and I believe that the houses do not belong to anybody.''

The notary who drew the two instruments mentioned by the trial judge was put upon the stand by the intervenor and testified as follows:

Q.—Your name?—A.—Luis Vizcarrondo.—Profession?—A.—Lawyer and notary.—Q.—Do you know Mrs. Ana Méndez Vaz?—A.—Very well.—Q.—Do you know Mr. Antonio Ducret?—A.—Yes, sir.—Q.—Have you had any opportunity to intervene in any deed executed by those people?—A.—In different transactions and businesses of theirs, for more than four years, I was the lawyer and notary of Mr. Ducret, Mr. De Choudens, Mrs. Méndez Vaz and her husband. They had business relations.—Q.—What is this?—A.—It is a deed executed by Mrs. Méndez Vaz and Ducret.—Q.—The first paragraph thereof says that it is to take effect from March first, 1924. It is dated March 30th of the same year. Why was it that it was antedated?—A.—I want you to allow me five minutes, as my reputation as a notary is questioned in this case, and I, as a man and a gentleman and as a member of a distinguished family, can not permit my name to be involved in court proceedings. I shall refer to a deed made by me prior to this one, two years ago, in which Mr. Ducret, who was a partner of Mr. De Chonden's, bought from a partnership,—I do not remember its name (if I had been prepared I would have brought my protocol),—bought from Mr. Kennedy, husband of Mrs. Méndez Vaz, and other people, two others who were members of the partnership, a manufacturing establishment for the making of confectionery, bread and biscuits, etc.—Q.—Of what did that factory consist?—A.—A bakery.—Q.—The building?—A.—No, sir, Mr. Ducret bought from those people all the machinery and some provisions that were stored there. I made an inventory of what was in the building and the deed was made accordingly. At least two years prior to this one. Soon after that, three or four months afterwards, Mr. Kennedy was sued by Luciano Ramos and he had all that property attached; I think there were two automobiles, a typewriter (the inventory is in the prior deed). I represented Mr. Ducret in the Municipal Court of Río Piedra's in the action in intervention 'to

recover personal property and the court decided it in our favor. Shortly after that Mr. Ducret owed a certain amount to Mrs. Méndez Vaz; I do not know for what, and afterwards he became also indebted to her by reason of his having rented a place from her, and some seven or eight months . . . (Defendant): That was told you by Mr. Ducret?—A.—I know that because I was their lawyer.— (Judge): Your knowledge, as their lawyer, was acquired because he told it to you?—A.—From all the things they told me. You know that a client has to communicate with his lawyer in order to be able to settle anything in court. Six or seven months prior to this deed, on different occasions, I was visited in my office by Mr. Ducret, and sometimes by Mrs. Méndez Vaz, to have me make the transfer of the property which he had acquired, Mr. Ducret transferring it to Mrs. Méndez Vaz in payment of a certain debt that was outstanding; I can not explain it, but it appears in my protocol. Mr. De Choudens also came to my office on different occasions suggesting that I should request Ducret to make a final sale to Mrs. Méndez Vaz, and thus obtain an amount which he was to receive, and divide with De Choudens, who was a partner, not in that same deed but in another deed, in order to place a bar in the Municipal Theatre and to establish a grocery business. In regard to this deed, fifteen or twenty days prior to its execution, not eight days as Mrs. Vaz says (I want to tell the court that this lady is a sick and neurasthenic person and can not remember certain points), fifteen or twenty days before that deed, when I had a professional partnership with Mr. Rincón Plumey and also with Mr. Quintana Reyes as protocolist and judicial agent, fifteen or twenty days prior to the signing of this deed Mr. Ducret and Mrs. Méndez Vaz came to my office to execute the deed. I had much work at the time and I ordered Mr. Quintana to prepare it. He took the notes and said that he would do it. Due to the work, time continued to pass until the day on which they came to the office to sign it (during those fifteen days prior to the signing of the deed she called me up and told me that she wanted to settle the matter because she desired to sell or make a satisfactory arrangement with that bakery and in that sense I talked two or three times with Mr. Quintana) when it was made and signed in their presence on the day mentioned in the deed, I think it was on March 31, 1924; this deed was made and signed by all in my presence and in the presence of the witnesses. I must say that I knew nothing of this attachment and this complaint, etc., because I repeat that I have been their lawyer for more than four years; and I am greatly surprised that after she requested this copy from me she did not inform

me of the complaint or the attachment. Two or three days later there came to me . . . I must omit certain question that arose in my office between the partners and I myself recommended Mr. Ducret to take Mrs. Méndez Vaz to Sancho Bonet's office.—Q.—That is all. —(Defendant): I have no questions."

Section 21 of our Law of Evidence expressly ordains that—

"A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence."

■ An attorney at law and notary in good standing is no exception to this general rule. In the testimony of Mr. Vizcarrondo we find none of the ordinary earmarks of mendacity. It is the most outstanding feature, if not the one trustworthy aspect of the instant case. It appears to have been given under the stress of strong feeling and without previous preparation. It evinces a commendable disposition to guard the confidential communications of the various clients concerned. It afforded ample opportunity for an exhaustive cross-examination, but the parties most concerned made no effort whatever to avail themselves of this opportunity. It stands unimpeached and uncontradicted upon the record.

The testimony of the intervenor herself does not inspire confidence. It may be that she had good reason to be nervous and apprehensive. It may be that the original transfer of property made by Kennedy and Suárez to Ducret was the real smoke screen. It may be and probably is true that there was no very definite contract of lease and that the accrued rental thereunder was not the sole or primary consideration for the transfer by Ducret. The statement made by Vizcarrondo by implication, if not directly, admits this. But it does not follow necessarily that the transfer was simulated or entirely without consideration.

It is an undisputed fact in the case that the building

wherein the machinery in controversy was installed and wherein the business of a bakery had been conducted for several years was the separate property of Ana Méndez Vaz. It is not pretended that prior to the transfer of the machinery to her she had ever received anything whatever in compensation for the use and occupancy of that building.

The order of attachment and return made thereon by the marshal were not introduced in evidence. If the writ had been placed in the hands of the marshal before noon or in the early afternoon of March 31st, then it is safe to assume that this important circumstance would have been brought to light at some time during the trial. The unexplained fact that the levy was not made until the day following points to the contrary conclusion. But even otherwise the fact that the notarial instrument was executed and the writ of execution issued on the same day raises no presumption of priority in favor of the writ. And as we have already pointed out the record as a whole disclosed no satisfactory basis for the inference that the notarial instrument in question was in fact executed as an afterthought at some time during the first week in April and deliberately antedated.

To sustain the theory of the court below would place public documents in this Island upon the same level with private writings and oral agreements and would be subversive of the spirit and the letter of our law, both substantive and adjective.

The judgment appealed from must be reversed.